# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-cv-00068-JHM

LANA MICHELE HARPER, Administratrix                         PLAINTIFFS
and Personal Representative of the Estate of
Chanson Spencer Morrow, Deceased, et al.

v.

DAVIESS COUNTY, KENTUCKY, et al.                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions for summary judgment. The first motion has been brought by "the River Valley defendants:" Green River Regional Mental Health-Mental Retardation Board d/b/a River Valley Behavioral Health ("River Valley") and Rebecca Moorman. (DN 49.) The second motion has been brought by "the County defendants:" Daviess County, Kentucky; David Osborne, individually and in his official capacity as the Daviess County Jailer; Chad Payne, individually and in his official capacity as an officer, employee, and/or agent of the Daviess County Detention Center; and David "Luke" Boarman, individually and in his official capacity as an officer, employee, and/or agent of the Daviess County Detention Center. (DN 59.) These matters are ripe for decision.

### I. BACKGROUND

This matter arises from the death of Chanson Spencer Morrow while an inmate at the Daviess County Detention Center. Morrow was arrested on February 19, 2014 and charged with first-degree assault after allegedly shooting his sister's boyfriend in the chest. (Arrest Citation [DN 59-3] at 2.) After being booked into the detention center, Deputy Jailer Joseph Stone had Morrow complete the "Standard Medical/Mental Health" questionnaire, in which Morrow

indicated he suffered from depression but had never attempted suicide and was not currently thinking about it. (Questionnaire [DN 59-5] at 2.) He was initially classified as a "high-risk" inmate based upon the assault being a "high-profile crime" and rumors of other inmates wanting to harm him. (Dep. Osborne [DN 59-9] at 21:10–22.) He was also placed on suicide watch around 5:45 p.m. after Stone received a recommendation to do so from the Kentucky Jail Mental Health Crisis Network. (Episode Report [DN 59-8] at 2–3.) While three detention center staff members were dressing him in suicide prevention attire, Morrow stated, "Would you please just shoot me in the head?" (Incident Report [DN 59-10] at 2.) Later that evening, from 11:45 to 11:52 p.m., Morrow was interviewed by defendant Moorman, an outpatient therapist employed by defendant River Valley. Moorman determined that Morrow did not need to be on suicide watch for the next 48 hours, as he denied having any suicidal intentions and reported having a supportive family, to which he expected to return after getting out of jail the next day. (Moorman Report [DN 59-13] at 2–5; Dep. Moorman [DN 59-12] at 37:7–38:16.) He was removed from a suicide watch cell and taken to a high-risk cell based upon his initial classification. (Dep. Jones [DN 59-20] at 10:1–9.)

As a high-risk inmate with no other individuals in his cell, Morrow was subject to checks by detention center staff at least once every hour. (Dep. Osborne [DN 59-9] at 20:13–17.) At the time of Morrow's death on February 20, defendant Boarman was responsible for checking Morrow's cell. (Dep. Boarman [DN 59-22] at 46:16–51:6.) Electronic records indicate that Boarman conducted checks on Morrow at 3:11 p.m., 4:23 p.m., 4:54 p.m., and 5:33 p.m. (*Id.*; Log Report [DN 69-1] at 1, 3–5.) The parties agree that surveillance footage also shows Boarman having a conversation with Morrow at 5:42 p.m., as well as Morrow having a conversation with another inmate at 5:47 p.m. and 5:50 p.m.

Boarman's next check of the cell occurred at 6:30 p.m.  (Dep. Osborne [DN 59-9] at 56:10–16; Log Report [DN 69-1] at 6.)  However, Boarman did not look into the cell; he used a device provided to him by the detention center to create an electronic log of his visit to the cell, but he never actually looked through the window of the cell to ensure that Morrow was not in any distress.  (Dep. Osborne [DN 59-9] at 54:7–18; Dep. Boarman [DN 59-22] at 60:8–14.)  At 7:15 p.m., detention center staff members were alerted that Morrow was hanging from a sheet in his cell.  (Dep. Payne [DN 59-21] at 49:2–14.)  Attempts were made to resuscitate Morrow, but he ultimately died from his injuries. (Nurse's Report [DN 59-7] at 2–3.)

Three plaintiffs have brought the present action: Lana Harper, as administratrix and personal representative of the estate of Morrow; Ashley Lambert, as custodian and legal guardian of O.K.M., a minor child of Morrow; and Jessica Peak, as custodian and legal guardian of K.A.P., a minor child of Morrow.  (Pls.' Amend. Compl. [DN 11] at 1.)  While they have asserted federal and state-law claims against numerous defendants, the plaintiffs have conceded many claims against the County defendants.  (Pls.' Response [DN 69] at 1–2.)  The only claims remaining are as follows:  § 1983 deliberate indifference against Boarman (in his individual capacity), Moorman, and River Valley (Count II); intentional infliction of emotional distress against Moorman and River Valley (Count III); negligence/wrongful death against Boarman (in his individual capacity) (Count IV), Moorman and River Valley (Count VII); and § 1983 failure to train and supervise against River Valley (Counts V and VI.)[1]  Boarman has moved for summary judgment as to all remaining claims against him (DN 59), and the River Valley

---

[1] Based upon the plaintiffs' concessions, the motion for summary judgment (DN 59) is **GRANTED** as to all claims against Daviess County, David Osborne, and Chad Payne.

defendants have moved for summary judgment as to the negligence/wrongful death claim.[2] (DN 49.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

---

[2] The River Valley defendants' motion for summary judgment only addresses the expert testimony requirements for state-law negligence claims. Further, the plaintiffs' response states that they interpret the motion as only seeking summary judgment on the state-law negligence claim. (DN 64, at 2.) No reply was filed. Therefore, the Court interprets the motion for summary judgment in the same manner as the plaintiffs and will only address Count VII. As such, Counts II, III, V, and VI remain pending against the River Valley defendants.

## III. DISCUSSION

### A. RIVER VALLEY DEFENDANTS

The Court begins with the motion by the River Valley defendants. They argue that summary judgment is appropriate on the negligence/wrongful death claim, as the plaintiffs have failed to offer any expert testimony as to the standard of care Moorman and River Valley were expected to meet. The plaintiffs allege that the River Valley defendants "owed Chanson Spencer Morrow the duty of reasonable mental health and/or medical care," and they "breached this duty of care by negligently assessing Mr. Morrow as a moderate suicide risk." (Pls.' Amend. Compl. [DN 11] ¶¶ 70–71.) These allegations pertain to whether the River Valley defendants breached a duty of care borne out of their professional relationship with Morrow. "In professional negligence cases, the standard of care 'is typically measured by the standard of conduct customary in the profession under the circumstances.'" *Lowe v. CSL Plasma Inc.*, 2016 WL 1090631, at *2 (W.D. Ky. Mar. 18, 2016) (quoting *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009)). "Establishing the standard of care typically requires expert testimony." *Id.* (citations omitted). The plaintiffs have offered no expert who will opine as to the standard of care for mental health professionals conducting evaluations to determine the risk of self-harm.

The plaintiffs argue that expert testimony is not required, as lay jurors can understand the standard of care in this case and do not need to hear expert testimony in order to render an appropriate verdict. *See Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 681 (Ky. 2003). This argument is based upon the time stamps on Moorman's report that recommended removing Morrow from suicide watch for 48 hours, as it indicates she spent seven minutes interviewing him before reaching this conclusion. (Moorman Report [DN 59-13] at 2–5.) The plaintiffs argue

that lay jurors will be able to understand that Moorman could not have met the standard of care for mental health professionals performing suicide evaluations in such a short time frame.

However, this argument confuses the duty owed to Morrow with whether it was breached. Lay jurors can understand from Moorman's testimony what she did in those seven minutes and form an opinion on whether she could have actually accomplished what she says she did in that time frame. But without expert testimony as to what was required or expected of her in evaluating Morrow, there is no standard against which those jurors can compare her actions and evaluate their propriety. The plaintiffs do not argue that evaluating individuals for their risk of suicide is "within the scope of common experience of jurors," and the Court does not believe that the average juror would have the requisite experience to make expert testimony unnecessary. *Lowe*, 2016 WL 1090631, at *2 (quoting *Miller*, 177 S.W.3d at 680). *See generally Preventing Suicide: A Technical Package of Polices, Programs, and Practices*, Center for Disease & Control (2017) (available at https://www.cdc.gov/violenceprevention/pdf/suicideTechnical Package.pdf) (providing different methods and information on how to "Identify and Support People at Risk"). As such, the Court finds that the lack of expert testimony on the standard of care for mental health professionals conducting evaluations to determine the risk of self-harm is fatal to the plaintiffs' negligence/wrongful death claim against the River Valley defendants. *Accord Corbier v. Watson*, 2017 WL 3116239, at *4 (S.D. Ill. July 21, 2017) (applying Illinois law) ("Deciding whether or not to place someone on suicide watch is a matter of mental health evaluation which requires the application of distinctively medical knowledge. As such, establishing the standard of care at trial will require expert testimony"). Therefore, the Court will **GRANT** the motion for summary judgment by the River Valley defendants as to Count VII for negligence/wrongful death.

## B. BOARMAN

### 1. § 1983 CLAIM

Boarman argues that he is entitled to summary judgment on Morrow's § 1983 claim alleging he was deliberately indifferent to Morrow's medical needs. Under the Due Process Clause of the Fourteenth Amendment, a pre-trial detainee has "a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 6112, 615–16 (6th Cir. 2005) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Thus, state actors violate a prisoner's constitutional rights when they are deliberately indifferent to the prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A prisoner's "psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The Sixth Circuit has specifically stated that

> the proper inquiry concerning the liability of a City and its employees . . . under section 1983 for a jail detainee's suicide is: whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.

*Barber v. City of Salem*, 953 F.2d 232, 239–40 (6th Cir. 1992).

The Sixth Circuit's opinion in *Gray* controls this case. In *Gray*, the court affirmed a grant of summary judgment to a jail employee who was responsible for checking on an inmate who ultimately committed suicide during his watch. In that case, the plaintiff had not shown that the officer "actually knew that Gray was at risk of committing suicide . . . The only conceivable way that any individual officer could have possibly concluded that Gray was a suicide risk was to have obtained and appropriately pieced together the knowledge of every other officer involved in the case." *Gray*, 399 F.3d at 616. The same is true here: Boarman was on duty from 3:00

p.m. to 11:00 p.m. on February 20, 2014, after Morrow had been taken off suicide watch, removed from a suicide watch cell, and placed in a high-risk cell without the same property restrictions as were previously in place. The plaintiffs have not offered any evidence that Boarman was actually aware that Morrow was at risk of committing suicide, through either receiving reports from other detention center employees or observing Morrow's behavior. And the knowledge of others in the jail that Morrow had previously been on suicide watch or made statements indicating he might be suicidal cannot be imputed to Boarman, as "the test for deliberate indifference is a subjective test . . . not an objective test or collective knowledge" standard. *Id.* (quoting district court).

For the plaintiffs' claim to succeed against Boarman, they must show that he was subjectively aware that there was a "strong likelihood" Morrow would commit suicide. *See Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994) ("Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference"). Such evidence is lacking in this case. Therefore, the motion for summary judgement as to Count II against Boarman is **GRANTED**.

### C. NEGLIGENCE/WRONGFUL DEATH

Boarman makes three arguments in favor of summary judgment as to the negligence/wrongful death claim. First, he argues that he is entitled to qualified immunity. However, the Court finds that Boarman is not immune from liability, as he was not performing a discretionary act when was conducting cell checks and failed to look into Morrow's cell. "Qualified official immunity applies to the negligent performance by a public officer or employee of . . . discretionary acts or functions. *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Yanero v. Davis*, 65 S.W.3d

510, 522 (Ky. 2001). However, an officer "is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citations omitted). While Boarman's supervision of Morrow may not have been "purely discretionary or purely ministerial," *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010), his actions were much more ministerial than discretionary. His job was to visit each cell, ensure that the inmate within was not in distress, and log his visit electronically. There is little room for discretion or judgment in that process. Instead, he was to execute specific duties, making his act ministerial and defeating his assertion of qualified immunity. *Accord Hedgepath v. Pelphrey*, 520 F. App'x 385, 390–91 (6th Cir. 2013) (requirement that deputy jailers check on inmates every twenty minutes and make sure they were conscious was ministerial); *Slone v. Lincoln Cty.*, 242 F. Supp. 3d 579, 597–98 (E.D. Ky. 2017) (supervision of inmates is ministerial).

Second, Boarman argues that he breached no duty owed to Morrow. "The law imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006) (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky. 1940)). However, "if a jailer knows or has reason to believe that a prisoner might do harm to himself, he has a duty to exercise reasonable care to assure that such harm does not occur." *Sudderth v. White*, 621 S.W.2d 33, 35 (Ky. Ct. App. 1981). The "critical question" that arises from these cases, though, remains the same as it is in "almost every negligence inquiry under the common law – namely, whether the

9

harm caused by the defendant's action was reasonably foreseeable." *Lawrence v. Madison Cty.*, 176 F. Supp. 3d 650, 680 (E.D. Ky. 2016).

The plaintiffs have failed to produce evidence that Boarman breached any duty owed to Morrow. There must be some evidence that Boarman had "reason to believe that [Morrow] might do harm to himself," and such evidence is lacking in this case. *Sudderth*, 621 S.W.2d at 35. As stated above, there is no evidence that Boarman was informed of Morrow having been on suicide watch the previous day or his statements indicating he might harm himself. He knew Morrow was in a "high-risk" cell, but that was due to the high-profile nature of his case and rumors of threats made against Morrow by other inmates, not because of any risk of self-harm. Other detention center staff members had lifted property restrictions that allowed Morrow to wear clothing other than suicide prevention attire and have a bed sheet, giving Boarman no reason to believe that Morrow should be monitored more closely. And there is no evidence in the record that Morrow behaved in a way in front of Boarman that would have given him notice of Morrow's impending suicide attempt. Without some evidence that Boarman had a reason to believe that Morrow may attempt to harm himself, the plaintiffs' claim fails. *Accord Criswell v. Wayne Cty.*, 165 F.3d 26, *7 (6th Cir. 1998) (Table) (applying Kentucky law) (summary judgment appropriate on negligence claim, as prisoner "neither expressed suicidal intent nor exhibited suicidal behavior in the presence of Assistant Chief Hickman and the county jail officials"); *Durham v. Gooch*, 2016 WL 552744, at *3 (Ky. Ct. App. Feb. 12, 2016) (defendant jailer entitled to summary judgment on negligence claim, as record contained no evidence he had reason to know prisoner was at risk of harming himself, even though prisoner had been on suicide watch in the jail the year before, unbeknownst to defendant).

There is no dispute that Boarman did not follow detention center procedures when he failed to check Morrow's cell at 6:30 p.m. But for the plaintiffs' negligence claim to succeed, they must prove more than Boarman's failure to follow internal procedures. The plaintiffs must show that the harm caused by not checking on Morrow was reasonably foreseeable. And in this case, there are no facts to suggest it was. As such, the Court will **GRANT** Boarman's motion for summary judgment as to the negligence claim. The Court need not reach Boarman's third argument as to causation.

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Green River Regional Mental Health-Mental Retardation Board d/b/a River Valley Behavioral Health and Rebecca Moorman (DN 49) is **GRANTED** as to Count VII for negligence/wrongful death. **IT IS FURTHER ORDERED** that the motion for summary judgment by Daviess County, Kentucky; David Osborne, individually and in his official capacity as the Daviess County Jailer; Chad Payne, individually and in his official capacity as an officer, employee, and/or agent of the Daviess County Detention Center; and David "Luke" Boarman, individually and in his official capacity as an officer, employee, and/or agent of the Daviess County Detention Center (DN 59) is **GRANTED**. Defendants Daviess County, Osborne, Payne, and Boarman are **DISMISSED** from the action.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 15, 2018

cc: counsel of record